Good morning. My name is Bruce Cohen and I represent Stephen Bassi-Ofioing, who is asking the court to grant this petition for review and to remand this case to the Board of Immigration Appeals with instructions to return it to the immigration court for a new trial or a new hearing. My client's been chasing the American dream for 18 years in this case. It is just amazing that it's been able to go on this long. He's had six different hearings with the immigration judge until there was finally a decision on this case. But he filed his initial application in 1992, and here we are 18 years later still talking about it. This matter showcases the occasional inefficiency and ineffectiveness of the immigration service, and you can see it throughout the record in this case, where the government attorney comes in and is unprepared, not familiar with the issues, all the different things that were filed, and you get a frustrated immigration judge that keeps resetting the case. The record is also replete with references. Well, I don't know what that's not necessarily something that justifies relief in the case. No, Your Honor. Of course not. Sometimes the delay works to your benefit. It does. And one might agree that he's been able to stay here 18 years with permission to work and would appear to be lawful resident status for a very long time, started a business, raising a family, et cetera. So from that standpoint, it has worked to his advantage. But he wants some finality, and I think that's why we're here today. The final thing I'd like to say before we get into the cases that the Court asked to be discussed is that the record is replete with references to marriage fraud. And on a careful examination of the record, in fact, there's never been any marriage fraud here. This is not a case where someone paid an American citizen or something like that to marry them. Rather, this is a case that involved one document, a divorce decree, and the immigration judge himself on page 462 and 463 of the record indicates that that matter was resolved and, in fact, there was no marriage fraud. And even to some extent, the immigration attorney for the government also on those same pages agrees with the judge that that matter was resolved. So as a matter of fact, there was no marriage fraud in this case. Even though there's been findings of it, the fact is there has been none. And that gets us into the cases that the Court asked that we discuss today. And if it's okay with the Court, I'd like to go in the reverse order. And if I don't reach all of them, maybe I can take care of that in the rebuttal, which I'll probably cut off at about a minute and a half towards the end there. But on the first case, which is similar to this case, is one from the Board of Immigration Appeals. It's Inrei Koloa Matangi. And in that case, the immigrant had a wife back in his own country, so he engaged in a bigamous relationship. He married a U.S. citizen. He had two wives at the same time. And he was issued a green card, and that green card was issued by fraud. But there was no finding under 204C, which is the marriage fraud statute. And that should have been the case here. In this particular case of Koloa Matangi, the Board of Immigration Appeals said that even though he got the green card through marriage fraud, there is an opportunity to apply for a waiver, specifically under Section 237A1H of the immigration statutes. And in our particular case, in the case before this Court, the immigration judge ruled on page 87 of the record that 237A1H waiver is not available to my client. And in light of that ruling, well, with regard to that ruling, the Board of Immigration Appeals adopted it. They didn't issue their own decision. They just approved the immigration judge's ruling that that waiver is not available. As a matter of fact, that waiver is available. And for that reason, this Court should grant the petition. The next case was Shin v. Holder. In Shin v. Holder, the mother in that case got her green card through a ‑‑ through bribing an immigration officer, through some sort of scheme like that. And then she turned around and sponsored her kids back in Korea so that they could get green cards and come here. They got the immigrant visa, which led to the green card. And then at some point, the immigration service discovered this fraud. I think what happened is the immigration officer got arrested for accepting bribes, and then they went back and looked at all the cases. Well, when they looked at this case, they filed proceedings to deport the children, saying that the children got the green card through the mother who unlawfully got it in the first place. And in that situation, this Court held that the children could apply for what's called a 212K waiver. And that's the waiver that's available where, through no fault of their own, the kids didn't realize that their green card was invalid. Very similar to the case at bar here, and that is because my client had no idea that when he was approved for a green card, that, in fact, he wasn't approved for a green card. It's a crazy situation, as recognized by the immigration judge, because he's got all the evidence that he's been approved for a green card, yet the government's saying he's not approved for a green card. And while on one hand, they're initiating these proceedings to try to deport him, on the other hand, they're readmitting him to the country and stamping his passport as a lawful permanent resident of the United States. So very similar to Shin, he was completely unaware that he did not have the status. Now, I will say, of course, the Court knows this, that while he says he's unaware, he also got some things in the mail that seemed to indicate that different applications were denied. But this goes to his long history, all in the record, of many visits to the Immigration Service, year after year after year, saying, what's going on with my case? When are you going to make a decision? Sorry we lost your file. And this just went on for many years. And so he was confused. I mean, he's entering the country, and they're questioning him at the airport, and they let him in. But he's not going to make a decision.   And so there's a lot of things that are in the record that seem to indicate that he's not aware of. And so I think that's why we're not arguing a stopple. No, Your Honor. So I guess I'm not quite sure I understand your argument that there was a finding that there was no marriage fraud. I don't see that that is your argument. It's not, Your Honor. I didn't see that that was before us.  It's not the argument. I mean, I just point it out as a point of reference, because the immigration judge even recognized and stated on the record that we're not here talking about marriage fraud. And the government lawyer agreed to it. And that's the record citation that I gave. But the point is, is that even if he did get it by so-called marriage fraud, there's waivers available. And the waiver in the case that the Court asked us to talk about, 237A1H, is the same immigration judge whose opinion was adopted by the BIA said it's not available. And in fact, the BIA says it is available. And this Court has said it's available. The next case the Court asked us to talk about was Biggs v. INS. And in that case, a Filipino individual had engaged in marriage fraud, but it wasn't discovered until her naturalization interview. And so she had no entitlement to the green card because she lied and even admitted she engaged in marriage fraud. But this Court, again, remanded the case, allowing her to reapply and submit additional evidence for suspension of deportation. I'm almost out of time, because I wanted to save some for rebuttal. But I did want to mention the first case on the list the Court asked us to talk about, Wong v. INS. Because in that case, the Court did not allow — this Court affirmed and did not allow for the immigrant to apply for a 241F waiver because there were no anchor relatives in the United States in lawful status. However, our case is just like another Ninth Circuit case, which no one has really cited, called Virk, V-I-R-K v. INS. It's a 295F3-1055. It's a 2002 case, exactly like ours, where this Court did allow the filing of a 241F waiver and stated that the reason they allowed it is because the immigrant had U.S. citizen children, therefore allowing the waiver to be considered. If you want to save some time, you better. Yes, Your Honor. Thank you.  May it please the Court. Bonnichima for the respondent, the Attorney General. Petitioners failed to show the only issue before this Court, whether the Court thought the Board abused its discretion in denying his motion to reconsider. Petitioner abandoned the arguments he brought before the Board, failed to exhaust the arguments. The argument that he brought before the Board was what? Whether the immigration judge erred in applying the law of the case in the context of the district court's finding of marriage fraud. And the Petitioner has now raised this argument. That was basically a claim that there had been no marriage fraud. That's correct. And that's not here. That's correct. He failed to exhaust that argument. And he failed to exhaust the arguments he raised to this Court. In any event, he was never granted conditional lawful permanent resident status. And according to the cases this Court has asked us to discuss, even if there had been a grant of lawful permanent resident status, it would be void ab initio because it was based on fraud. The fraud that Petitioner fails to see was a finding after the Petitioner's first I-130 petition based on his marriage to Terrilyn Pierce. That was denied under INA 204C, based on a finding of marriage fraud, that he had submitted an altered divorce document. And the INA's correspondence, the INS's correspondence in error, the letters that were mistakenly sent to him, do not grant any benefits. If the IRS were to mistakenly send a check for $2 billion to an individual, that individual wouldn't be entitled to the $2 billion. So the question of whether or not there was an altered, for purposes of this case, it is established that there was a doctored divorce decree. That's correct, Your Honor. I think that formed the basis for the marriage fraud. That's correct, on which the district court relied and subsequently the immigration judge relied. At this point, the only issue before this Court is whether the Board abused its discretion in failing to find that the immigration judge, that there had been any error committed. Subject to the Court's questions, we rest on our briefs. Can you tell me why the, you have to, pardon me, I'm suffering from a little laryngitis, can you tell me why the government would send letters telling anyone that they had been granted a just status, when in fact they had not? The I-130 petition had not been approved at that point. No, I understand that, but what it says that it has, why would the government send such a letter? It was correspondence in error. It was nothing more and nothing less. Do we have anything in the record that explains that other than the raw information? No, Your Honor. So we just have the letter and then the government's word that it in fact had not been processed? Four months later, once they discovered that those letters had been sent, they sent the intent to deny the I-130 petition. Yes. That's all we have. That's correct, Your Honor. So we don't know why the letters were sent? You assert it's in error, but we don't know. That's correct, Your Honor. All right. Subject to any further questions, the Court may end. Presumably, if there had been some misconduct in connection with it. I'm sorry? If there had been some misconduct, there might be a claim for estoppel or something like that, I suppose, but we don't have anything like that. There is no evidence in the record. All right. Subject to any further questions, the Court may have. The government rests. Thank you, Your Honor. Thank you. Thank you, Your Honor. Your Honors, with my remaining 50 seconds, I just wanted to say that when they say that the I-130 was denied for marriage fraud under 204C, it's not the case. A careful reading of the record, and the immigration judge noted this as well, would show that the adjustment of status, or the I-130 was denied, and then it said C attached for the reasons. And then when you look at the attachment, it talks about the I-485 being denied, but not for fraud. Fraud is mentioned nowhere in that decision, and that's the only I-130 that was denied for fraud. So it's a very important distinction. I'd also mention in the case of, well, I guess I'm only down to 10 seconds. So I would point out to the Court that the BIA decision on the motion to reopen, motion to reconsider, specifically upheld the decision of the immigration judge, which wrongfully stated that a 237A1H waiver is not available when, in fact, it is, and therefore asked that this petition be granted. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Thomas, Gould